IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRU BOTTLING, INC. d/b/a THE GIVING JUICE,<br>*Plaintiff,*<br><br>v.<br><br>UNITED NATURAL FOODS, INC.,<br>*Defendant.* | C.A. No.: |

## COMPLAINT

Now comes Plaintiff, Bru Bottling, Inc. d/b/a The Giving Juice ("Plaintiff"), by and through its undersigned counsel, states and alleges the following for its Complaint against Defendant, United Natural Foods, Inc. ("Defendant"):

### *Parties*

1. Plaintiff is a Florida corporation with its principal place of business located at 1507 Villa Juno Drive North, Juno Beach, Florida.

2. Defendant is a Delaware corporation with its principal place of business located at 313 Iron Horse Way, Providence, Rhode Island

### *Jurisdiction and Venue*

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this district.

*Summary of the Basis for this Lawsuit*

5. Plaintiff is in the business of manufacturing organic juice products for wholesale and retail sale. Plaintiff's business was formed in the memory of the principals' son who was unfortunately born with a heart defect that claimed his life too early.

6. Plaintiff's mission is to carry on with the strength and courage exhibited by the principals' son, and Plaintiff distributes portions of its profits to the foundation established in memory of their son in order to assist families with sick children in need.

7. Unfortunately this noble venture has been preyed upon by Defendant, as Defendant has engaged in fraudulent conduct robbing Plaintiff of over $200,000.00 in profits which would have otherwise been utilized to assist families struggling to survive while caring for critically ill children.

*Facts*

8. Plaintiff is a producer and supplier of beverage products to distributors and retailers.

9. Defendant is a purchaser and distributor of consumable food and non-food products made at supplier production facilities.

10. At all times relevant herein, Plaintiff and Defendant were parties to that certain Supplier Agreement (the "Agreement") with an effective date of March 16, 2021 under which Plaintiff is a "Supplier."

11. Section 3 of the Agreement provides that "UNFI will purchase from Supplier certain food products, non-food products and/or supplements ("Products")."

12. The Agreement sets out various processes and procedures governing the return of products deemed "Unacceptable."

13. Section 12(A) of the Agreement outlines the circumstances by which a Supplier's Product may be deemed "Unacceptable." "Unacceptable product means that the Product is:

    (1) Unable to maintain its quality and integrity in accordance with industry standards for the duration of the Product's shelf life;

    (2) Unable to maintain its integrity with respect to its packaging, labeling and/or UPC compliance in accordance with industry standards;

    (3) Fails to meet the applicable representations and warranties of this Agreement; or

    (4) Is the subject of a recall or market withdrawal.

14. Should a Product be deemed Unacceptable, there is a clearly defined process to be followed under the Agreement, Section 12(B), which provides limited options for the return or disposal of the Product – options which are to be exercised at Plaintiff's sole discretion.

15. Under the Agreement, if a Product is deemed Unacceptable, the Product is to be returned to Plaintiff for full credit (i.e. a chargeback).

16. Alternatively, Plaintiff may, at its discretion, direct Defendant to dispose of the Product.

17. Under the Agreement, if Products are deemed Unacceptable as a result of the negligence or willful misconduct of Defendant or its customers, Plaintiff is not required to credit Defendant for the Products and Defendant is not permitted to charge any amounts back to Plaintiff.

18. Beginning in October 2021, Defendant began issuing chargebacks against Plaintiff in connection with Products sold and purportedly removed from shelves at retailer facilities.

19. The chargebacks at issue operate as deductions from amounts owed by Defendant from Plaintiff.

20. Plaintiff invoices Defendant for Products delivered to Defendant.

21. When Defendant submits payment of the purchase order invoice, it deducts a certain amount of payment for Products it claims were unacceptable and/or unsalable.

22. As of the filing of this Complaint, Plaintiff has sold over $338,000.00 worth of Products to Defendant, and thus far Defendant has charged back over $220,000.00. This equates to charge backs of over 65% of Product sold to Defendant by Plaintiff.

23. Defendant has never returned the Product for which the chargebacks were assessed to Plaintiff.

24. Defendant has not ever given Plaintiff the option to either have the Product returned or, alternatively, to dispose of the Product under the conditions outlined in Section 12(B) of the Agreement.

25. Plaintiff does not know the exact whereabouts of the chargeback products because Defendant has refused or otherwise failed to provide a full accounting to Plaintiff despite Plaintiff's requests for the same.

26. Plaintiff made Defendant aware of these issues since the chargebacks began, and officially sent a demand letter to Defendant on June 25, 2024.

27. Through Defendant's response letter dated July 29, 2024, Defendant indicated that "Notably, the amount of deductions from Harris Teeter accounted for $102,555.84 of the amounts deducted."

28. Plaintiff engaged in conversations with Harris Teeter thereafter, and representatives of Harris Teeter indicated that they did not know where the $102,555.84 figure relayed by Defendant in Defendant's July 29, 2024 letter derived from.

29. Defendant also issued a chargeback in the amount of $16,000.00 related to shelving Plaintiff's Products in Stop & Shop – however, Plaintiff's Products have never been shelved or sold in Stop & Shop stores.

30. Through examination of the chargebacks issued against Plaintiff by Defendant, it is also apparent that there were several months of invoices/Product deliveries where the chargeback amount issued by Defendant to Plaintiff exceeded the value of the Products shipped/sold to Defendant by Plaintiff.

31. These actions are not permitted by the parties' agreement.

32. The primary party that has been benefiting from the chargebacks is Defendant.

33. To the extent that any Product(s) of Plaintiff were in fact deemed Unacceptable Product, no documentation of such has been provided to Plaintiff by Defendant to date indicating the same, other than entries and deductions made on periodic invoices.

34. To the extent that Product(s) were indeed Unacceptable Product under the parties' Agreement (which Plaintiff does not concede), then Defendant could and should have complied with the Agreement and provided the Product(s) in question back to Plaintiff so that Plaintiff could attempt to resell the Product and minimize its losses, but Defendant failed to comply with the Agreement and precluded such efforts by Plaintiff.

35. All of the subject chargebacks at issue are unwarranted and in violation of the Agreement between the parties.

36. The failure to return the chargeback products is unwarranted and in violation of the Agreement between the parties.

37. It is apparent that Defendant's explanation of the issues associated with the chargeback products is intentionally vague because, upon information and belief, to the extent that Products were asserted as Unacceptable Product by Defendant, said Product(s) were in fact not defective, unacceptable, nonconforming to industry standards, or otherwise unsalable.

38. Defendant's bad faith conduct has caused Plaintiff to incur significant damages in the form of other harmed business relationships.

39. By the end of 2022 and into 2023, Defendant's lack of payment to Plaintiff caused Plaintiff to incur supply chain issues, which in turn directly led to the discontinuance of Plaintiff's products in other large, national retail chains.

40. Over that same period of time, Plaintiff was supplying tens of thousands of dollars worth of its product to Defendant, without payment from Defendant.

41. Defendant did not send a payment check to Plaintiff until May 2023, and at that time when the Plaintiff was owed in excess of $70,000.00, Defendant paid less than $10,000.00 and issued chargeback notes for deductions Defendant was logging since Q3 of 2022.

<u>Count I – Breach of Contract</u>

42. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37 as if set forth in full herein.

43. Plaintiff and Defendant are parties to a valid and enforceable contract.

44. Plaintiff has performed all of its obligations under the Agreement, including, but not limited to, supplying Products to Defendant.

45. Beginning in the fourth quarter of 2021 and continuing to the time of filing this Complaint, Defendant has breached the contract by unlawfully assessing chargebacks against Plaintiff, failing to return chargeback products to Plaintiff, failing to permit Plaintiff to exercise its discretion under the Agreement of whether to accept the Product for return or request that Defendant dispose of the Product, taking fraudulent chargebacks against Plaintiff, taking chargebacks against Plaintiff for Products that were actually sold in stores, among other things.

46. To the extent that any chargeback products were defective, unacceptable, nonconforming to industry standards, or otherwise unsalable, said Products were only in that condition because of negligent or willful mishandling occurring after delivery to Defendant.

47. As a proximate result of Defendant's breach of contract, Plaintiff has sustained damages in excess of $220,000.00, plus interest, costs, attorneys' fees, and any other damages to be proven at trial.

*Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing*

48. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 43 as if set forth in full herein.

49. Plaintiff and Defendant are parties to a valid and enforceable contract.

50. Plaintiff has performed all of its obligations under the Agreement.

51. Beginning in the fourth quarter of 2021 and continuing to the time of filing this Complaint, Defendant breached its duty to comply with its obligations in good faith under the Agreement by unlawfully assessing chargebacks against Plaintiff, failing to return chargeback products to Plaintiff, failing to permit Plaintiff to exercise its discretion under the Agreement of whether to accept the Product for return or request that Defendant dispose of the Product, taking

fraudulent chargebacks against Plaintiff, taking chargebacks against Plaintiff for Products that were actually sold in stores, among other things.

52. The aforementioned actions, inactions, and misrepresentations constitute breaches of the implied covenant of good faith and fair dealing.

53. As a proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has sustained damages in excess of $220,000.00, plus interest, costs, attorneys' fees, and any other damages to be proven at trial.

*Count III – Unjust Enrichment*

54. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 as if set forth in full herein.

55. Plaintiff supplied Defendant with Products that would ultimately be sold at retail stores.

56. Defendant received and distributed the Products.

57. Defendant unlawfully charged back amounts to Plaintiff related to Products that were actually sold at retail with compensation being paid to Defendant by third parties.

58. Defendant did not fully pay the amounts due to Plaintiff for the Products it received and sold.

59. Beginning in the fourth quarter of 2021, and continuing to the time of filing this Complaint, Defendant has taken unwarranted chargebacks against Plaintiff by deducting substantial amounts from the payment it submits for Products supplied by Plaintiff.

60. Despite Plaintiff's attempt to dispute the charges, Defendant has not returned any of the wrongfully-retained payment amounts for the Products it ordered.

61. Defendant has not returned any of the chargeback products.

62. Accordingly, Defendant has retained a significant financial benefit, provided by, and to the detriment of, Plaintiff.

63. It would be inequitable for Defendant to keep the monies withheld from Plaintiff through chargebacks and through the punitive audits, since Plaintiff incurred significant cost and expense to produce and provide the Products to Defendant, and Defendant retained and distributed the Product to its customers, thereby generating significant profit for itself at Plaintiff's expense.

64. Defendant's scheme to unjustly enrich itself has resulted in a wrongfully retained financial benefit to Defendant exceeding $220,000.00 at the expense of Plaintiff.

<u>Count IV – Conversion (Funds)</u>

65. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 60 as if set forth in full herein.

66. Plaintiff supplied Defendant with Products that would ultimately be sold in grocery stores and/or other retailers.

67. Defendant received and distributed the Products.

68. Defendant did not fully pay the amounts due to Plaintiff for the Products it received.

69. Plaintiff was and is entitled to payment of funds for the Products provided to Defendant (the "Converted Funds").

70. Defendant is also now holding amounts owed to Plaintiff associated with the punitive chargebacks issued by Defendant to Plaintiff, which also constitute Converted Funds.

71. Through the nonconsensual taking of chargeback amounts against Plaintiff, beginning in the fourth quarter of 2021 and continuing to the time of filing this Complaint, Defendant currently has possession of the Converted Funds.

72. Defendant's exercise of dominion over the Converted Funds is inconsistent with Plaintiff's right to possess said funds.

73. Plaintiff has sustained damages as a result of Defendant's conversion, to include over $220,000.00 in monetary damages arising from the chargebacks.

*Count V – Conversion (Products)*

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 69 as if set forth in full herein.

75. Plaintiff supplied Defendant with Products that would ultimately be sold at grocery stores and/or other retailers.

76. Defendant received and distributed the Products.

77. Retailers placed inventory orders with Defendant, including orders for Plaintiff's Products.

78. Defendant issued chargebacks against Plaintiff for purportedly Unacceptable Products.

79. Pursuant to the Agreement, Plaintiff was and is entitled to the return of the chargeback products (the "Converted Products").

80. Defendant has not returned the Converted Products to Plaintiff.

81. Defendant currently has or had possession of the Converted Products. Defendant's possession of the Converted Products is and was nonconsensual.

82. If Defendant no longer has possession of certain Converted Products, it is because it disposed of the Converted Products after taking possession.

83. Defendant's exercise of dominion over the Converted Products is inconsistent with Plaintiff's right to possess said Products.

84. Plaintiff has sustained damages as a result of Defendant's conversion, to include over $220,000.00 in monetary damages arising from its lost Product.

### *Count VI – Accounting*

85. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 80 as if set forth in full herein.

86. Based on the facts asserted above, Plaintiff is entitled to a full accounting from Defendant regarding the financial transactions at issue in this lawsuit, the chargebacks in question, the use and distribution of the subject Products, and all related transactions and financial information.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount no less than $2,000,000.00, restitution in the amount of Defendant's unjust enrichment and disgorgement of any profits gained at Plaintiff's expense, an award of the value of all property unlawfully converted by Defendant, punitive damages, interest, costs, reasonable attorneys' fees, and any other relief this Honorable Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 27, 2024 | */s/ Joseph P. Carnevale*<br>Joseph P. Carnevale, Esq. (#9121)<br>Savage Law Partners, LLP<br>564 South Water Street<br>Providence, Rhode Island 02903<br>Tel: (401) 238-8500<br>Fax: (401) 648-6748<br>jcarnevale@savagelawpartners.com<br>*Attorney for Plaintiff Bru Bottling, Inc. d/b/a The Giving Juice* |